Filed 10/17/24  In re Jade P. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Jade P., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E083855 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1501426) |
| v. | OPINION |
| P.I., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Conditionally reversed with directions.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel for Plaintiff and Respondent.

1

P.I. (Mother) appeals from the juvenile court's order terminating parental rights to her daughter, Jade P.  Mother argues that the court and Riverside County Department of Public Social Services (DPSS) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law.  We agree in part and conditionally reverse.

BACKGROUND

Mother has three other children who are Jade's half siblings.  Her parental rights to those three half siblings were terminated (in 2016, 2021, and 2022, respectively) after the children tested positive at birth for amphetamines, methamphetamines, and/or opiates.  Garrett P. (Father) has another daughter who is Jade's fourth half sibling.  A relative has legal guardianship of that half sibling.  (Father is not a party to this appeal.)

Father and Mother lived with the paternal great-grandmother, paternal great-aunt, and paternal uncle.  Jade was born in October 2022, and both she and Mother tested positive for methamphetamine and opiates.  Mother acknowledged that she used methamphetamine and heroin daily throughout the pregnancy.  Father was in an inpatient substance abuse treatment program.  Before that, he used methamphetamine and heroin daily with Mother.

DPSS obtained a protective custody warrant to take Jade into protective custody.  It also filed a petition under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j), alleging that the parents abused controlled substances, Mother's parental rights to Jade's half siblings were terminated, and one of Jade's half siblings had been

abused or neglected. (Unlabeled statutory references are to the Welfare and Institutions Code.) The court detained Jade from both parents in October 2022.

According to the social worker's detention report, both parents denied any Indian ancestry.[1] The court asked Mother about Indian ancestry at the detention hearing, and Mother replied that she did not have any. Mother also filed Judicial Council form ICWA-020 indicating that Jade may be eligible for membership in the Natchez tribe of Oklahoma. Father did not appear at the detention hearing, but the paternal grandmother was present. The court asked the paternal grandmother about Indian ancestry, and she replied that she was not aware of any. Father later filed Judicial Council form ICWA-020 indicating that neither he nor Jade was a member or eligible for membership in an Indian tribe.

When the social worker interviewed Mother for the jurisdiction/disposition report, Mother identified the maternal grandmother as her support system. Regarding possible placements, the social worker reported that she spoke to "the paternal aunt," J.B., who was caring for Jade's half sibling. J.B. was not able to care for Jade.

The court asked Father about Indian ancestry at the jurisdiction hearing, and Father denied any. DPSS filed an amended petition to reflect Jade's true name, and the court found the allegations of the amended petition to be true. At the disposition hearing, the court removed Jade from the parents' custody, ordered reunification services for

---

**1** Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

Father, and denied Mother reunification services under section 361.5, subdivision (b)(10) and (11) (prior termination of reunification services and parental rights with respect to a sibling, and the parent has not made a reasonable effort to treat the problems that led to removal of the sibling). The court also found that DPSS had conducted a sufficient ICWA inquiry and that ICWA did not apply to Jade.

The court terminated Father's reunification services at the six-month review hearing in July 2023, and it set the matter for a section 366.26 hearing. The court again found that ICWA did not apply to Jade and that DPSS had conducted a sufficient ICWA inquiry.

At the section 366.26 hearing in March 2024, the court found that Jade was likely to be adopted and terminated parental rights. Although the court did not make an express ICWA finding at the section 366.26 hearing, the order terminating parental rights "was 'necessarily premised on a *current* finding by the juvenile court'" that ICWA did not apply to Jade. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10.)

Several weeks later, the court held a jurisdiction and disposition hearing concerning Jade's recently born fifth sibling. The court noted for the record that Mother and the maternal grandmother had checked in for that hearing, but they did not appear in the courtroom after being paged.

DISCUSSION

Mother argues that DPSS prejudicially erred by failing to investigate her claim of Natchez ancestry and by failing to ask certain extended family members about Jade's potential Indian ancestry. We agree that DPSS failed to comply with its duty of initial

4

inquiry with respect to extended family members. But DPSS did not err by failing to conduct a further inquiry into Mother's Natchez claim.

To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe, or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. § 1903(4), (8); § 224.1, subds. (a)(4), (b)(1); *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338 ["'Indian tribe' is defined so as to include only federally recognized Indian tribes"].) The child welfare department and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).)[2] "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), disapproved on another ground by *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18.)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R., supra*, 82 Cal.App.5th at p. 678.) The child welfare department's duty to inquire begins "when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The department must ask the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child," and the department must also ask the child and the child's family members, including extended family members, upon first contact with

---

[2]    The Legislature recently enacted Assembly Bill No. 81 (2023-2024 Reg. Sess.) (Assembly Bill 81), which amended section 224.2 effective September 27, 2024. (Stats. 2024, ch. 656, § 3.) We quote that version of the statute.

5

those individuals.  (*Ibid.*)  In addition, if the child is taken into the department's temporary custody under section 306, "or if they were initially taken into protective custody pursuant to a warrant described in Section 340," then the department must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b)(2).)[3]  Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (§ 224.1, subd. (c)(1).)

---

[3]    Before Assembly Bill 81 was enacted, section 224.2, subdivision (b), stated that the child welfare department had a duty to inquire of extended family members (and others) if the child was placed into the department's temporary custody under section 306, and the statute did not expressly refer to protective custody under section 340. (Former § 224.2, subd. (b), enacted by Stats. 2018, ch. 833, § 5.)  Courts interpreting that version of section 224.2, subdivision (b), split on whether the duty to inquire of extended family members was triggered if the department took the child into custody under section 340 pursuant to a protective custody warrant.  (E.g., *In re Ja.O.* (2023) 91 Cal.App.5th 672, 678, review granted July 26, 2023, S280572; *In re Delila D.* (2023) 93 Cal.App.5th 953, 961, review granted Sept. 27, 2023, S281447.)  Our Supreme Court is reviewing the issue.  (*In re Ja.O.* (2023) 310 Cal.Rptr.3d 728.)

But Assembly Bill 81 recently clarified that aspect of the law by requiring child welfare departments to inquire of extended family members regardless of whether the child was taken into temporary custody under section 306 or protective custody under section 340.  (E.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 81 (2023-2024 Reg. Sess.) as amended Aug. 19, 2024, p. 5 [the bill "[c]larifies the timing, duration, and scope of a county department's, and a court's, duty to inquire whether a child is or may be an Indian child"].)  That clarification applies to ICWA inquiries and findings that predated the enactment of Assembly Bill 81.  (See *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922 ["A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment"].)

Juvenile courts must conduct their own initial inquiry as well. "Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679, quoting 25 C.F.R. § 23.107(a) (2022).) Similarly, state law requires the court to pursue an ICWA inquiry at the first hearing on a dependency petition (or at the first court appearance of a party or "other interested person[]," if the party or other interested person was not present at the first hearing). (§ 224.2, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. [Citation.] '[R]eason to believe' exists whenever the court or DPSS has 'information suggesting that either the parent of the child or the child is a member [or citizen] or may be eligible for membership [or citizenship] in an Indian tribe.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679, quoting § 224.2, subd. (e), 1st par. & (e)(1).) "The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility." (*Ricky R.*, at p. 679, citing § 224.2, subd. (e)(2)(A)-(C).)

The child welfare department "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of Court, rule

5.481(a)(5).) The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.)

"[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] '"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."' [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

Mother first argues that her claim of Natchez ancestry triggered DPSS's duty of further inquiry. The argument lacks merit. The duty of further inquiry is triggered by reason to believe that the proceedings involve an Indian child—that is, someone who is a member of a federally recognized tribe or is eligible for membership in such a tribe. The Natchez tribe is not federally recognized. (89 Fed.Reg. 944-948 (Jan. 8, 2024) ["Indian

8

Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs"].)  The Natchez claim thus provided no reason to believe that Jade was an Indian child within the meaning of ICWA and related state law, so DPSS had no duty of further inquiry with respect to that claim.  (See *In re K.P.* (2009) 175 Cal.App.4th 1, 4-5 [the parent's claim of membership in a tribe that was not federally recognized did not trigger ICWA duty to provide notice].)

Mother also argues that DPSS failed to comply with its duty of initial inquiry, because the department did not document any efforts to inquire of extended family members under subdivision (b) of section 224.2.  We agree.  Mother identifies the paternal uncle, who lived in the same household as the parents.  She also identifies the maternal grandmother, whom Mother said was her support system.  Mother appears to have been in contact with the maternal grandmother, as there is evidence that the maternal grandmother accompanied Mother to the courthouse for a hearing in Jade's sibling's case.  But there is no evidence that DPSS asked the parents for the paternal uncle's or the maternal grandmother's contact information or otherwise attempted to contact those relatives.  On this record, there was not sufficient evidence for the court's implied finding that DPSS conducted an adequate and proper ICWA inquiry, so we must conditionally reverse the order terminating parental rights and remand for DPSS to conduct an inquiry of the paternal uncle and the maternal grandmother.  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

Mother contends that DPSS also failed to ask the paternal great-grandmother and paternal great-aunt about potential Indian ancestry, but those relatives do not qualify as

9

extended family members within the meaning of ICWA.  Mother therefore has not shown that DPSS erred with respect to those relatives.

Mother additionally argues that DPSS failed to inquire of J.B., who is described in the jurisdiction/disposition report as "the paternal aunt" and caregiver of Jade's half sibling.  Although it is unclear, J.B. likely is not related to Jade.  Jade's only paternal half sibling is in a legal guardianship with that child's grandmother.  J.B. thus appears to be caring for one of Jade's maternal half siblings.  If that is the case, then J.B. is a paternal aunt of the child in her care but not a paternal aunt of Jade, who does not share a father with that maternal half sibling.  In any event, because we are remanding for DPSS to inquire of other relatives, the department should inquire of J.B. if she is Jade's extended family member.

For these reasons, we conclude that DPSS failed to conduct an adequate initial inquiry under section 224.2, subdivision (b)(2), so conditional reversal is required.  (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

### DISPOSITION

The order terminating parental rights is conditionally reversed.  On remand, the juvenile court shall order DPSS to comply with its duty of initial inquiry under subdivision (b) of section 224.2 and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the proper tribes (25 U.S.C. § 1912(a); § 224.3).  The court shall also order DPSS to comply with the documentation requirements of rule 5.481(a)(5) of the California Rules of Court.  If the court determines that DPSS has complied and that ICWA does not apply, then the court shall reinstate the

10

order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

11